**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND**

**CIVIL ACTION NO. 22-40-DLB**

**DIVERSICAIRE LEASING CORP.
d/b/a BOYD NURSING AND REHABILITATION CENTER,
DIVCERRSICAIRE HEALTHCARE SERVICES, INC.,
DIVERSICAIRE MANAGEMENT SERVICES CO.
ADVOCAT FINANCE, INC., and
OMEGA HEALTHCARE INVESTORS, INC.                    PLAINTIFFS**

**v.                             MEMORANDUM OPINION AND ORDER**

**DEBORAH BROUTHON
as Adminstratrix of the
ESTATE OF ROBIN LYNN BROUGHTON                      DEFENDANT**

*** *** *** ***

**I.     INTRODUCTION**

This matter is before the Court upon Plaintiffs' Motion to Compel Arbitration and Enjoin Defendant (Doc. # 3) and Defendant's Motion to Dismiss (Doc. # 9). The motions have been fully briefed and are ripe for review. For the reasons set forth herein, the Court finds that it has proper subject matter jurisdiction over this matter, and that the arbitration agreement which forms the basis of this lawsuit is legal, binding, and enforceable. As a result, Plaintiffs' motion to compel arbitration shall be granted.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from Robin Lynn Broughton's residency at Boyd Nursing and Rehabilitation in Ashland, Kentucky in 2019.

On July 7, 2017, her sister-in-law, Deborah Broughton was appointed her Co-

Guardian by the Boyd District Court. (Doc. # 1-3 Guardianship Order).

Subsequently, on September 13, 2019, Deborah Broughton admitted her sister-in-law to the Boyd Nursing and Rehabilitation Center.[1] As part of the admissions process, she executed certain documents on behalf of Robin, as her "Responsible Party." Included in the documents, was an Arbitration Agreement which requires the arbitration of "any legal dispute, controversy, demand, or claim . . . arising out of, or relating to the Resident's admission to the facility, or any service, diagnosis, or care of the resident provided by the facility[.]" (Doc. # 1-1). The agreement specifically states:

> Any legal dispute, controversy, demand, or claim…arising out of, or relating to the Resident's admission to the facility, or any service, diagnosis, or care of the Resident provided by the facility including the Applicability of the Arbitration Agreement and the validity thereof, shall be resolved exclusively by binding arbitration. . . . This agreement to arbitrate includes, but is not limited to, any claim for disputed payment, non-payment, or refund, or violations of any rights granted to the Resident by law or by this Agreement , and also includes, but is not limited to, claims of breach of contract, fraud or misrepresentation, negligence, gross negligence, malpractice or any other claim based on any departure from accepted standards of medical, nursing, health care or safety, whether sounding in tort, contract, consumer trade practices….that could be brought under applicable state or federal civil laws.

*Id.*

The Agreement also expressly states that " the Resident further understands that the effect of this arbitration agreement is that all claims between the parties cannot be brought as a lawsuit in a court of law and Resident hereby waives his/her constitutional right to have such claims decided by a judge or jury." *Id.* The Arbitration Agreement specifically binds the Resident and the Resident's "next of kin, guardian, executor,

---

[1] It is unclear from the record whether Ms. Broughton was admitted to the facility in September or in March of 2019. However, the documents which form the basis of this lawsuit were signed by Defendant on September 13, 2019.

2

administrator legal representative, or heir" *Id.* The Agreement also binds the Facility's "agents, officers, directors, affiliates, and any parent company, subsidiary or other person or entity in any way alleged to own, operate, or manage the skilled nursing facility." *Id.* Finally, the parties agreed that the Arbitration Agreement "and any applicable proceeding applicable thereto, are to be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. §1-16." *Id*.

On April 13, 2022, Defendant filed in the Circuit Court of Boyd County, Kentucky, Case No. 22-CI-00259, a negligence, medical negligence and corporate negligence civil action against Diversicare Leasing Corp. d/b/a Boyd Nursing and Rehabilitation Center, Diversicare Healthcare Services, Inc., Diversicare Management Services Co., Advocat Finance, Inc., Omega Healthcare Investors, Inc., and Cindy Salyers, in her capacity as Administrator of Boyd Nursing and Rehabilitation.  In the Complaint, she alleges that during her residency at the Boyd Nursing and Rehabilitation Center, Robyn Broughton "suffered accelerated deterioration of her health and physical condition beyond that caused by the aging process," specific injuries and "unnecessary loss of personal dignity, extreme pain and suffering, degradation, mental anguish, disability [and] disfigurement." (Doc. # 1-2, ¶ 22, 23).

On May 25, 2022, Diversicare Leasing Corp. d/b/a Boyd Nursing and Rehabilitation Center, Diversicare Healthcare Services, Inc., Diversicare Management Services Co., Advocat Finance, Inc. and Omega Healthcare Investors, Inc. filed this civil action, as Plaintiffs, alleging federal subject matter jurisdiction by virtue of diversity and asking this Court to find the arbitration agreement to be valid and enforceable, to compel Defendant to arbitrate her state court claims, and to enter an order enjoining the

Defendant from pursuing her claims in state court.

Defendant seeks a dismissal of all claims alleged herein. She contends that this Court lacks subject-matter jurisdiction, that the arbitration agreement is not enforceable, or, alternatively, that the Court should abstain from proceeding in this matter.

## III. ANALYSIS

### A. Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may assert lack of subject-matter jurisdiction as a defense. Fed. R. Civ. P. 12(b)(1). When jurisdiction is challenged under this rule, the burden is on the plaintiff to prove that jurisdiction exists. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Federal courts are courts of limited jurisdiction, and subject matter jurisdiction may be obtained only with the existence of diverse parties or a federal question. *Heartwood, Inc. v. Agpaoa*, 628 F.3d 261, 266 (6th Cir. 2010); 28 U.S.C. §§ 1331 & 1332.

Here, neither party asserts the existence of a federal question. Rather, the disputed question is that of diversity. 28 U.S.C. § 1332 provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States."

Defendant has not challenged the allegations in Plaintiffs' Complaint concerning the citizenship of the named Plaintiffs in this action. Nor has Defendant challenged the amount in controversy. Rather, she contends that complete diversity of citizenship among the parties cannot be established because Cindy Salyers, Administrator at the subject facility, named in the state court complaint, but not in this action, is a Kentucky citizen and

4

an indispensable party under Fed.R.Civ.P. 19. She maintains that Salyer's joinder would destroy the complete diversity among parties required by 28 U.S.C. 1332(a)(1). As such, she seeks dismissal of this case pursuant to Fed. R. Civ. P 12(b)(1) for lack of subject matter jurisdiction.

Yet, this Court and other courts within this District have consistently held that the nursing home administrators are not indispensable parties per Rule 19. As the Court explained in *GGNSC v. Hanley*, 2014 WL 1333204 (E.D. Ky. 2014), Rule 19 deals with what were historically known as "necessary" and "indispensable" parties. The terms "necessary" and "indispensable" are terms of art in jurisprudence concerning Rule 19, and "necessary" refers to a party who should be joined if feasible, while "indispensable" refers to a party whose participation is so important to the resolution of the case that, if the joinder of the party is not feasible, the suit must be dismissed. If a necessary party cannot be joined without divesting the court of subject-matter jurisdiction, the Rule provides additional criteria for determining whether that party is indispensable, but if the court finds that the party is anything less than indispensable, the case proceeds without that party, and if, on the other hand, the court finds that the litigation cannot proceed in the party's absence, the court must dismiss the case.

The first step in determining whether the administrators are indispensable is to determine whether they are "necessary". A party is deemed necessary under the Rule if:

> (A) in that person's absence, complete relief cannot be accorded among those already parties; or
>
> (B) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:
>
> (i) as a practical matter, impair or impede the person's ability to protect the interest; or

5

>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19.

Defendant's claims against the individual administrator and the Plaintiffs in this case are based on the same occurrence, to-wit, the alleged negligence that resulted in alleged injury to Robin Broughton. Further, the arbitration agreement governs claims against the corporate parties as well as the administrator. Moreover, if this Court and the state court were to reach different conclusions regarding whether the arbitration agreement is enforceable, the administrator would face inconsistent procedural remedies. Accordingly, the Court concludes that the administrator is not necessary party to the action.

However, that is not the end of the subject matter jurisdiction inquiry. As joinder would destroy diversity jurisdiction, the Court must also determine whether Salyers is an "indispensable" party. To do so, this Court must balance the following factors: (1) the extent to which a judgment rendered in her absence might prejudice her or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in her absence would be adequate; and (4) whether Plaintiffs would have an adequate remedy if the action were dismissed for non-joinder. Fed.R.Civ.P. 19(b).

Defendant argues that she will not be afforded complete relief in the absence of the administrator in this action. She asserts that she will be unduly and unnecessarily prejudiced by either a grant of jurisdiction by this Court or by being subjected to arbitration with just the named Plaintiffs, and that such a result would result in duplication of proceedings. The Court will address each of these arguments in turn.

First, the duplication of proceedings in these circumstances is not a disqualifying factor. The Sixth Circuit has rejected of this line of argument in a factually similar case addressing joinder: "[T]he possibility of having to proceed simultaneously in both state and federal court," or in two separate arbitrations for that matter, "is a direct result of [Broughton's] decision to file a suit naming [Boyd Nursing and Rehabilitation and the individual administrator] in state court rather than to demand arbitration under the [arbitration agreement]." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 202 (2001). Moreover, "the possibility of piecemeal litigation is a necessary and inevitable consequence of the FAA's policy that strongly favors arbitration." *Id.* The Court considers that there is low risk that the state court will reach an inconsistent outcome regarding the subject arbitration agreement as it relates to any party. Even assuming such risk, however, this is not the degree of prejudice required to conclude an absent party is indispensable. *Id.* at 203.

Determining whether the dispute as it relates to Boyd Nursing and Rehabilitation is subject to arbitration is a simple matter of contract interpretation and does not require the presence or input of the individual administrator. *Id.* The prejudice Defendant fears does not present the degree of prejudice necessary to support a conclusion that the administrator is an indispensable party. Furthermore, "[w]here the risk of prejudice is minimal, the Court need not consider how protective provisions in the judgment, the shaping of relief, or other measures might reduce the risk of prejudice." *Id.* at 205.

With regard to the adequacy of available relief, the administrator's status as an alleged joint tortfeasor is not dispositive of the Rule 19(b) inquiry. Indeed, the United States Supreme Court has explicitly rejected this theory as a *non sequitur*. *Temple v.*

7

*Synthes Corp., LTD.*, 498 U.S. 5, 8, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990) (holding that a party's status as a joint tortfeasor does not make them a necessary or indispensable party but simply a permissive party to an action against one of them).

Finally, although an adequate remedy exists in state court even if this Court were to dismiss the case, this is not enough to tip the balance in favor of joinder. On balance, the factors do not dictate that the Court find the individual administrator an indispensable party. As such, the failure to join her does not warrant dismissal.

The District Courts of Kentucky as well as the Sixth Circuit have repeatedly addressed, and rejected, Defendant's jurisdictional and indispensable party arguments. *See e.g., GGNSC Vanceburg, LLC v. Hanley*, 2014 WL 1333204 (E.D.Ky., 2014); *Golden Gate Nat. Senior Care, LLC v. Estate of Blevins ex rel. Patton*, 2015 WL 1467927 (E.D.Ky., 2015); Diversicare Leasing Corp. v. Strother, 2015 WL 1802661 (E.D.Ky., 2015); *Diversicare Leasing Corp. v. Johnston*, 2015 WL 1802842 (E.D.Ky., 2015); *Golden Living Center-Vanceburg v. Reeder*, 2016 WL 4706924 (E.D.Ky., 2016); *Golden Gate Nat. Senior Care, LLC v. Jones*, 2016 WL 4744151 (E.D.Ky., 2016); *Golden Gate National Senior Care, LLC v. Leach*, 2018 WL 738974 (E.D.Ky., 2018); *Diversicare Leasing Corp. v. Hamilton*, 2018 WL 3235787 (E.D.Ky., 2018). The case law is clear - this court has proper subject matter jurisdiction and the parties before the court are properly diverse.

**B. Abstention**

Defendant argues that, even if this Court finds that it has jurisdiction over this case, it should abstain from hearing it. The Supreme Court has long recognized that federal courts should sometimes abstain from exercising jurisdiction over a case that "involves substantially the same issues and substantially the same parties as a parallel case in

8

state court." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, at 817 (1976)). However, because "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress," *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996), abstention "'is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.'" *Colorado River*, 424 U.S. at 813 (*quoting County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–189 (1959)). For this reason, "[o]nly the 'clearest of justifications will support abstention.'" *RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553, 557 (6th Cir. 2013).

When determining whether abstention is appropriate under the *Colorado River* doctrine, district courts consider and weigh eight factors: (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; . . . (4) the order in which jurisdiction was obtained[;] . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state-court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction. *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 886 (6th Cir. 2002). "The decision to dismiss a federal action because of a parallel state-court action rests 'on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Id*.

The first factor is inapplicable. With regard to the second factor, Defendant does not address how the federal forum would be less convenient to her or other parties as both courts are in Eastern Kentucky. As such, these two factors weigh against abstention and in favor of exercising jurisdiction.

9

The third factor, which aims to avoid piecemeal litigation, requires analysis that is similar to the one undertaken when determining whether parties are indispensable in as much as it asks the Court to consider "whether there is a 'clear federal policy evinc[ing] . . . the avoidance of piecemeal adjudication' found within the statutory scheme at issue." *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009) (*quoting Colorado River*, 424 U.S. 800, 819); No such policy exists when considering a case under the Federal Arbitration Act. *Id*. The fourth factor weighs in favor of abstention as the state court case was filed just one month before the filing of the instant case.

The fifth factor weighs in favor of exercising jurisdiction because "the FAA provides the source of law for interpreting the arbitration clause[]" in the subject agreement. *PaineWebber*, 276 F.3d at 208.

The sixth factor, whether the state court action may adequately protect the federal plaintiff's rights, "presents the strongest basis for abstaining" because "[t]he FAA extends Congress's legislative authority to the maximum extent permitted under the Commerce Clause and is therefore binding on state courts that interpret contracts involving interstate commerce." *Id.*

Factor seven is similar to the fourth factor in that it asks the Court to consider the relative stage of the two proceedings. The state court action is still in the pleading stage as Plaintiffs' Complaint in this Court was filed shortly after they served in the state court action. Thus, this factor weighs in favor of this Court's jurisdiction.

Under the eighth factor, the Court considers whether there is concurrent jurisdiction. Here, concurrent jurisdiction exists between the state and federal courts, but

"a congressional act provides the governing law and expresses a preference for federal litigation." Consequently, this factor is insufficient to justify abstention. *Id*.

In sum, factors four, six, and eight weigh in favor of abstention. The other five factors do not. However, neither factors four or eight provide a strong reason to abstain. In light of these circumstances, and the fact that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," *Colorado River*, 424 U.S. at 813, the Court will not abstain.

### C.      Validity of Arbitration Agreement

Defendant also seeks dismissal pursuant to Fed. R. Civ. P 12 (b)(6) for failure to state a claim upon which relief may be granted. Specifically, she contends that arbitration agreement is invalid and unenforceable because she did not have the authority to bind her sister-in-law to such an agreement. In support of her argument, she cites the Kentucky Supreme Court's opinion in *Jackson v. Legacy Health Services, Inc.*, 640 S.W.3d 728 (Ky. 2022). In *Jackson,* the Court found that a duly appointed guardian did not have the authority to bind her ward to an arbitration agreement. *Id.* Specifically, the Court concluded that a guardian only has the authority to bind her ward to "the extent necessary to provide needed care and services to the ward" and that "limitation to [the ward's] fundamental right to a jury trial is beyond" that extent. *Id.* at 735.

Although the *Jackson* case is relatively new, an attempt to circumvent an arbitration agreement is not. It is firmly established that any law which unduly disfavors arbitration is preempted by the Federal Arbitration Act ("FAA"). *See generally*, *AT&T Mobility LLC v. Conception,* 563 U.S. 333 (2011). The FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other

11

contracts." *Seawright v. Am. Gen. Fin. Servs., Inc.,* 507 F.3d 967, 972 (6th Cir. 2007) (*quoting Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). Section 2 of the FAA provides that written provisions for arbitration "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2  By enacting § 2, Congress precluded any state from singling out arbitration provisions for suspect status. Therefore, if any state law conflicts with the FAA, it is "displaced by the federal measure." *Doctor's Associates, Inc. v. Casarotto*, 516 U.S. 681, 682 (1996).

To determine whether the FAA preempts *Jackson*, this Court applies the test set forth in *Concepcion*, in which the Supreme Court described two situations in which a state law is preempted by the FAA. *Concepcion*, 563 U.S. at 341. First, "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Id.* Second, when a "doctrine normally thought to be generally applicable . . . is alleged to have been applied in a fashion that disfavors arbitration," the court must determine whether the state law rule would have a "disproportionate impact" on arbitration agreements. *Id*. at 341–42. This type of disproportionate impact "stand[s] as an obstacle to the accomplishment of the FAA's objectives." *Id.* at 343.

*Jackson* fails in either instance as it bears directly upon a guardian's right to enter into an arbitration agreement.  The *Jackson* court explicitly held that a ward's right to a trial by jury cannot be waived via an agreement to arbitrate. Per *Jackson*, not only are agreements to arbitrate "disfavored," they are prohibited. By its own terms, *Jackson* falls squarely within Section 2 of the FAA and is, therefore, preempted.  Defendant's argument

12

to the contrary is without merit and the Court finds that she had the requisite authority to execute the arbitration agreement.

Under the terms of the arbitration agreement, Defendant must submit her claims to arbitration. However, the question remains whether this Court should enjoin her from pursuing her parallel action in state court. The Court finds that such an injunction is necessary, and the Defendant is enjoined from proceeding in Greenup Circuit Court. "Although the FAA requires courts to stay their own proceedings where the issues to be litigated are subject to an agreement to arbitrate, it does not specifically authorize federal courts to stay proceedings pending in state courts." *Great Earth Companies*, 288 F.3d at 893 (6th Cir. 2002) (internal citations omitted). For this reason, "the District Court's authority to enjoin state-court proceedings is subject to the legal and equitable standards for injunctions generally, including the Anti Injunction Act." *Id.* Pursuant to the Anti-Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

An injunction in this case "properly falls within the exception for injunctions 'necessary to protect or effectuate [this Court's] judgments.' " *Great Earth*, 288 F.3d at 894. The Court has determined that the parties entered into a binding arbitration agreement covering the scope of Defendant's claims. Having made such a determination and compelling her to submit to arbitration, it is necessary to enjoin Defendant from pursing her claims in any alternative forum, including state court. Otherwise, she would be permitted to circumvent her arbitration agreement and in doing so, circumvent this

13

Court's judgment that she be compelled to arbitrate her claims. Accordingly, the Court will order that Defendant be enjoined from proceeding with her pending state court action.

A valid and binding arbitration agreement was executed. Therefore, this matter must be referred to arbitration.

IV. **CONCLUSION**

For the reasons set forth herein,

**IT IS HEREBY ORDERED** as follows:

(1) Plaintiffs' Motion to Compel Arbitration and to Enjoin Defendant (Doc. # 3) is **GRANTED**;

(2) Defendant's Motion to Dismiss (Doc. # 9) is **DENIED**;

(3) Defendant shall prosecute all of her claims arising out of Robin Broughton's residency at Boyd Nursing and Rehabilitation Center in accordance with the terms of the arbitration agreement;

(4) This matter is hereby **DISMISSED WITH PREJUDICE** and **STRICKEN** from the active docket of the Court; and

(5) This Court will retain jurisdiction over this matter for the purpose of enforcing any arbitration award.

This 14th day of November, 2022.



Signed By:
_David L. Bunning_
**United States District Judge**

L:\DATA\ORDERS\Ashland Civil\2022\22-40 MOO re arbitration.docx